SUTTON, Circuit Judge, dissenting.
Teresa Barry has given us plenty of good reasons to deny qualified immunity to Judge James O'Grady on the ground that a material dispute of fact clouds what happened in this case and precludes summary judgment. Rather than accept those reasons and rather than provide useful law-of-the-case precedent for the upcoming trial and any appeal from that trial, the court dismisses the appeal on the ground that we lack subject matter jurisdiction to review the fact inferences drawn by the district court under Johnson v. Jones , 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). This approach gives Johnson v. Jones a bad name, cannot be reconciled with Supreme Court precedent, and makes little sense. If appellate courts have no jurisdiction to review the inferences drawn by a district court judge in resolving a claim of qualified immunity at summary judgment, how are they supposed to apply de novo review to the district court's decision, as Supreme Court decisions since Johnson do? See, e.g. , Plumhoff v. Rickard , --- U.S. ----, 134 S.Ct. 2012, 188 L.Ed.2d 1056 (2014) ;
*446 Scott v. Harris , 550 U.S. 372, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). I respectfully dissent.
In Johnson v. Jones , Houston Jones sued five police officers for allegedly beating him. 515 U.S. at 307, 115 S.Ct. 2151. Three officers moved for summary judgment. When Jones presented evidence to support his account that the three officers beat him, they responded with affidavits saying only that they didn't do it. The officers conceded that Jones would win if the jury believed his version of events. Faced with this zero-sum, he-said/they-said standoff, the district court denied summary judgment. Id. at 307-09, 115 S.Ct. 2151. The Seventh Circuit, in a two-page per curiam opinion, dismissed the appeal for lack of jurisdiction because "defendants may urge only legal issues on [interlocutory] appeals," and the only thing the officers did was deny the evidence-supported accusation. Jones v. Johnson , 26 F.3d 727, 727 (7th Cir. 1994). The Supreme Court affirmed, as well it should have. It agreed that a defendant can appeal a denial of qualified immunity only "to the extent that it turns on an issue of law." Johnson , 515 U.S. at 313, 115 S.Ct. 2151 (quoting Mitchell v. Forsyth , 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) ). A party seeking qualified immunity cannot appeal a summary judgment order that solely determines a question of "evidence sufficiency"-that is, a question of "which facts a party may, or may not, be able to prove at trial." Id.
Johnson establishes an important principle-but a limited principle. An officer may not appeal the denial of a qualified immunity ruling solely on the ground that the plaintiff's record-supported facts are wrong. In the rare case in which that is all the officer does-saying in effect only that the plaintiff is lying-an appellate court should dismiss the appeal for lack of jurisdiction. Otherwise, we have jurisdiction to decide-on de novo review-whether, after reading the factual record in the light most favorable to the plaintiff, the officer should win as a matter of law on the first or second prong of qualified immunity. That's all there is to it. Each of our too-many-to-count additional glosses on Johnson is needlessly complicated, inconsistent with later Supreme Court cases, contradicts our duty to apply fresh review to a district court's summary judgment decision, and ultimately is hurtful to the party it is designed to help: the plaintiff.
The key gloss used today (and not for the first time) is to transform Johnson into a rule about what the district court did, as opposed to what the defendant officer did. No longer is the subject-matter-jurisdiction question about what the officer does , namely raise a legal question about whether the plaintiff's record evidence creates a material issue of fact for trial. It is a subject-matter-jurisdiction question about what the district court did , namely drew "inferences" that have become a forbidden source of appeal because in our circuit "that too is a prohibited fact-based appeal." DiLuzio v. Vill. of Yorkville , 796 F.3d 604, 609 (6th Cir. 2015).
Consider the defendant official's appellate stance today to see how far we have come in transforming Johnson . The defendant recounts Barry's story about the raunchy November conversation. Appellant's Br. 4-6. He notes that Barry thought he grew "hostile" to her after the female attorney came to speak to him and describes the evidence to which she points to support that allegation. Id. at 6-8. And he recounts the harsh language and inappropriate comments that Barry alleges he made. Id. at 11, 24-26. I have little doubt that the defendant will challenge the veracity of those allegations at trial, as he is entitled to do. But at this stage, he has accepted the statements and done what *447 every appellant has been allowed to do since the creation of Civil Rule 56 : raise a legal challenge about whether, even accepting those facts and the inferences from those facts, he should win as a matter of law. Even on Barry's version of the facts, the defendant thinks his conduct was not severe enough to create a hostile work environment that violated her clearly established rights. Id . at 44-55. That is a legal question-two legal questions really. And the defendant is permitted to take an interlocutory appeal to argue that the evidence, even when viewed in Barry's favor, could not prove that he retaliated against her in violation of her clearly established rights under the First Amendment. Id. at 29, 34-40. Yet the court refuses to decide whether the district court drew the proper inferences when it denied Barry qualified immunity. Supra at 443-45 & n.2. Instead, it dismisses the appeal for lack of jurisdiction. Id. at 445. It escapes me how this approach can be consistent with the responsibilities assigned to us in reviewing a summary judgment decision. Namely: Are the facts, when read in the light most favorable to the plaintiff, "sufficient as a matter of law to state a triable question under each legal element essential to liability[?]" Walton v. Powell , 821 F.3d 1204, 1209 (10th Cir. 2016) (Gorsuch, J.) (rejecting the broad view of Johnson adopted by several of our cases). Answering that law-bound question is "a core responsibility of appellate courts." Plumhoff , 134 S.Ct. at 2019.
In cases since Johnson , that's how the Supreme Court has looked at it. Scott v. Harris reviewed the appeal of an officer who caused a fleeing suspect to crash during a high-speed car chase. Because a camera captured the chase, there were no facts to contest, just inferences from those facts. The district court inferred from the video, when viewed in the light most favorable to the plaintiff, that a triable issue remained over whether Harris was driving safely. The Court reviewed that inference, found that the videotape evidence could not support it, and reversed. Scott , 550 U.S. at 374-86, 127 S.Ct. 1769. That outcome and approach cannot be reconciled with this circuit's glosses on Johnson .
The Court did the same thing in Plumhoff v. Rickard . After the district court denied summary judgment because a triable issue of fact remained over whether the officers violated the Fourth Amendment, our court affirmed, but only after a many-paged attempt to figure out whether to dismiss for lack of jurisdiction. See Estate of Allen v. City of W. Memphis , 509 F. App'x 388, 391-93 (6th Cir. 2012). Where we saw complexity, the Supreme Court saw simplicity. It reversed. In doing so, it quickly dispensed with the jurisdictional question. The case, the Court reasoned, was "nothing like the order in Johnson " because it did not boil down to the he-said/they-said "claim that other officers were responsible for the shooting." Plumhoff , 134 S.Ct. at 2019. Rather, it "raise[d] legal issues" that were "quite different from any purely factual issues that the trial court might confront if the case were tried." Id. Namely, the question was whether the evidence-which included both video and witness depositions-could support the legal conclusion that the officers violated Rickard's clearly established constitutional rights. Because it could not, the Court reversed. Id. at 2020-24.
Instead of following the examples of Scott and Plumhoff , some panels of our court have buried the two cases in exceptions. One exception: Johnson does not apply to cases where all genuinely disputed facts are caught on video. See, e.g. , Rudlaff v. Gillispie , 791 F.3d 638, 639 (6th Cir. 2015). But that wasn't so in Plumhoff , and at any rate this innovation has no support in the Civil Rules or case law. The *448 other exception: Johnson does not apply if the record evidence, whether videotaped or not, "blatantly contradict[s]" the inferences that the district court drew. DiLuzio , 796 F.3d at 609 (quoting Scott , 550 U.S. at 380, 127 S.Ct. 1769 ). But just because the Court identified a district court's obvious error in evaluating the evidence as a sufficient condition for jurisdiction doesn't mean it's a necessary one. A rule that applies based on the medium of evidence or based on whether the district court's inferences are really wrong, not just conventionally wrong, is not a rule-and as standards go it is a terribly confusing way to decide something as essential as the subject matter jurisdiction of the court. Indeed, because this approach implicates a matter of subject matter jurisdiction, we may never look the other way. The arguments may not be forfeited or waived, requiring us to initiate this ineffable task in every summary judgment appeal involving qualified immunity-whether the lawyers press it or not.
If any doubt remains about the oddity of our approach to Johnson , the Supreme Court's approach to interlocutory appeals at the motion-to-dismiss stage should dispel it. At that stage, we accept the complaint's allegations as true and review whether the district court's pro-plaintiff inferences are "plausible." Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). That is analogous to what we should do at the summary judgment stage. How strange to say that we have subject matter jurisdiction to overturn the inferences that the district court drew when reviewing one type of interlocutory appeal (motion to dismiss) but that we lack jurisdiction to overturn those same inferences when reviewing another type of interlocutory appeal (summary judgment).
We stand alone in pushing Johnson so aggressively. Most circuits, true enough, have some decisions wrestling with the reach of Johnson . And most of them have some opinions going both ways. See Romo v. Largen , 723 F.3d 670, 686 (6th Cir. 2013) (Sutton, J., concurring in part and concurring in the judgment) (listing cases).
But none seem to invoke Johnson as often as we do. A database search reveals that our published and unpublished opinions have cited Johnson seventy-one times since the Court decided Plumhoff in 2014, when one might have thought the Supreme Court rejected the full-flowering form of Johnson . The Tenth Circuit comes in a distant second with twenty-nine citations. The First, Second, Third, Fourth, Fifth, Seventh, Ninth, Eleventh, and D.C. Circuits have cited the case between zero and seventeen times. The long and the short of it is that we are spending a lot of time doing something that no one else seems to be doing.
Making matters worse, our broad reading invites a host of inefficiencies and complications. How exactly does an appellate court decide what the district court inferred? Should we defer only to the inferences that the district court explicitly drew? See Lewis v. Tripp , 604 F.3d 1221, 1226 (10th Cir. 2010). I doubt it. District courts are busy and will not parse out every inference they make in every denial of summary judgment. Subject matter jurisdiction should not turn on whether a district court happened to say "I infer" on one day but not another. Should we instead scrutinize the record to figure out what inferences we think the district court drew or it implied? I doubt that as well. It weds the already difficult task of record review with the guess work implicit in any attempt to divine what the district court was thinking when it denied summary judgment. Keep in mind that these innovations replace something we know how to do and have been doing for years: determine *449 whether the defendant officer, after reading all reasonable inferences in the record in favor of the plaintiff, should win as a matter of law or whether a material triable issue of fact requires a jury trial. I know how to do one of these tasks but have little idea how to do the other.
Oddly enough, all of this can be evaded by the clever attorney who makes sure to raise a prong-two qualified immunity argument-which to date remains a legal question subject to interlocutory review. Then he or she can use pendent jurisdiction over the rest of the appeal, as the two are invariably "inextricably intertwined." Swint v. Chambers Cty. Comm'n , 514 U.S. 35, 51, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995).
Last but not least, our approach to Johnson hurts the parties it means to help. Just ask Teresa Barry. Had we reached the merits of her claim, we might have affirmed the district court's denial of qualified immunity on the ground that a material fact dispute remained. That might have given Barry and the trial judge clear direction as to what was at stake and what law should control the jury trial at prongs one and two of the qualified immunity inquiry. And in a future appeal, the law of the case would establish the contours of what the jury could permissibly decide. Instead, Barry returns to the district court empty-handed.
In the final analysis, our gloss on Johnson fails to respect Supreme Court precedent, ignores the de novo standard of review applicable in reviewing summary judgment decisions, can be sidestepped at ease, and hurts the people it is designed to help. The court seeing things differently, I respectfully dissent.