**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0502n.06

Case No. 19-4253

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

ELLEN ABDUR-RAHIM; HARRISON KALLNER; CONNOR LEFEVERS,

    Plaintiffs-Appellees,

v.

CITY OF COLUMBUS, OHIO,

    Defendant,

JUSTIN MASTERS,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Aug 26, 2020
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

BEFORE: SUTTON, COOK, and MURPHY, Circuit Judges.

COOK, Circuit Judge. Officer Justin Masters appeals the district court's order denying his motion for summary judgment on qualified immunity grounds. We REVERSE in part, AFFIRM in part, and REMAND to the district court.

**I.**

During a 2017 demonstration, protestors gathered in a downtown Columbus intersection and blocked traffic for approximately forty-five minutes while police officers ordered them to disperse. The officers, outnumbered by protestors, lacked equipment for a mass arrest and feared that individual arrests would escalate the situation from non-violent to violent. So, over the course

of forty-five minutes they issued dispersal orders, warned that they would use pepper spray, and donned gas masks in an effort to garner compliance.

After these tactics failed, twelve officers deployed a burst of pepper spray over the crowd from several feet away; the officers were trained on using mace to disperse crowds. Protestors then quickly began to disperse while officers entered the intersection to clear lingering individuals by pepper spraying them directly.

Plaintiff Ellen Abdur-Rahim stood among the protestors in the intersection that evening, near the front of the crowd, and she admits hearing the officers' orders and warnings. Indeed, as the officers donned protective equipment and distributed pepper spray canisters, Abdur-Rahim relayed to other protestors that the officers were about to spray them, but "the crowd didn't want to leave the streets," so she chose to stay. (R. 63-30 at 456.)

After the initial spray over the crowd, Abdur-Rahim claims that she was attempting to leave the intersection while crouched over and suffering the effects of pepper spray when defendant Officer Justin Masters approached her from behind, put his hand on her shoulder to stop her, and sprayed directly into her left eye. Masters offered his different version. Because Abdur-Rahim wasn't moving after the initial spray, he pushed her. When she still didn't move, he then sprayed her directly.

In video footage of the incident, a large banner obscures Abdur-Rahim during the initial spray but she becomes visible shortly thereafter, facing away from the officers and toward the middle of the intersection, slightly crouched over and slowly walking, pausing between steps. Several officers enter the intersection and begin directly spraying lingering protestors. Masters approaches Abdur-Rahim, who has fallen behind the bulk of protestors leaving the intersection, touches her left arm, and deploys a momentary burst of pepper spray from a short distance. She

then turns toward the sidewalk and walks a few steps before running to leave the intersection. The entire incident, beginning with the first deployment of pepper spray and ending with Abdur-Rahim leaving the intersection, lasts fewer than fifteen seconds.

Abdur-Rahim testified to having experienced severe pain from the pepper spray and suffering mental trauma because of the incident. She filed a complaint against Masters and the City of Columbus, alleging two 42 U.S.C. § 1983 causes of action—First Amendment retaliation and Fourth Amendment excessive force—and Ohio assault and battery. Defendant Masters moved for summary judgment on each of Abdur-Rahim's claims, asserting the defenses of qualified immunity and Ohio statutory immunity. The district court denied Masters's motion as to the excessive force and assault and battery claims. He appeals.

## II.

Though the denial of a summary judgment motion usually presents "neither a final appealable order nor an appealable interlocutory order," the denial of qualified immunity, "'to the extent that it raises a question of law,' provides an exception to this general rule." *Floyd v. City of Detroit*, 518 F.3d 398, 404 (6th Cir. 2008) (quoting *Risbridger v. Connelly,* 275 F.3d 565, 568 (6th Cir. 2002)). We view the facts in the plaintiff's favor, in light of the video evidence, but "consider[] only the facts that were knowable to the defendant officer[]." *White v. Pauly*, 137 S. Ct. 548, 550 (2017); *see also Rudlaff v. Gillispie*, 791 F.3d 638, 639 (6th Cir. 2015) (noting that where the record includes video footage, we view the facts in the light depicted therein). We review de novo the district court's denial of summary judgment on qualified immunity grounds. *See Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 565 (6th Cir. 2013).

Qualified immunity shields officers from civil liability unless they violate a plaintiff's clearly established constitutional or statutory rights. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735

(2011). This affords officers "breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (quotation marks and citation omitted).

Analysis of the propriety of the district court's call on Masters's entitlement to immunity here encompasses two questions: (1) whether Masters violated Abdur-Rahim's constitutional rights; and (2) whether those rights were clearly established. *See al-Kidd*, 563 U.S. at 735. Because the second disposes of the issue, we opt to address only it. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *see also Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 508 (6th Cir. 2012).

A clearly established right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citation omitted). Existing precedent must place the constitutional question "beyond debate." *al-Kidd*, 563 U.S. at 741. The court cannot "define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (citation omitted). Instead, caselaw must "clearly and specifically hold that what the officer did—under the circumstances the officer did it—violated the Constitution." *Rudlaff*, 791 F.3d at 641. Specificity proves especially important in the excessive force context, an "area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela*, 138 S. Ct. at 1153 (quotation marks and citation omitted); *see also Howse v. Hodous*, 953 F.3d 402, 407 (6th Cir. 2020) ("[T]he Supreme Court has stressed 'the need to identify a case where an officer acting under similar circumstances' was found 'to have violated the Fourth Amendment.' Without such a case, the plaintiff will almost always lose." (citations omitted)).

As an initial matter, Masters contends that he did not seize Abdur-Rahim and that the district court therefore erred by analyzing the excessive force claim under the Fourth Amendment, rather than under a heightened Fourteenth Amendment standard. Rather than confront this issue, we assume that the Fourth Amendment governs because, in any event, no clearly established law barred Masters's conduct.

In finding that Masters violated clearly established law, the district court failed to define the right with requisite specificity and failed to identify a case where an officer acted under similar circumstances. First, the district court found that "the right to be free from physical force when one is not resisting the police is a clearly established right." (R. 74 at 1040 (quoting *Wysong v. City of Heath*, 260 F. App'x 848, 856 (6th Cir. 2008)).) Perhaps, but defining the right at this level of generality misses the Supreme Court's admonition that "the clearly established law must be 'particularized' to the facts of the case." *White*, 137 S. Ct. at 552 (citation omitted). Indeed, in the sole published case cited for this proposition, an officer tasered a lone arrestee—a markedly different circumstance. *See Goodwin v. City of Painesville*, 781 F.3d 314, 325–28 (6th Cir. 2015) (finding that officers violated clearly established law by tasering suspect without telling him he was under arrest or warning that they would use force). The other cited Sixth Circuit case— *Wysong*, 260 F. App'x at 856–58—recognized the general right to be free from force when not resisting arrest and hypothesized (counterfactually) that if the suspect had lain motionless while officers struck him, he would have alleged a viable excessive force claim.

Second, the district court found that Masters had "notice that the use of force after mace has incapacitated a suspect is excessive." (R. 74 at 1041.) But again, none of our cases has extended that proposition to apply when using pepper spray to disperse a crowd. Rather, the cases cited by the district court and Abdur-Rahim each pertain to the reasonableness of using force

against an individual arrestee whom officers already have restrained or subdued. *See Adams v. Metiva*, 31 F.3d 375, 386–87 (6th Cir. 1994) (concluding that officers used excessive force when continuously pepper spraying arrestee even after he complied with orders to sit in his car: "A reasonable person would know that spraying mace on a blinded and incapacitated person sitting in a car would violate the right to be free from excessive force"); *Shreve v. Jessamine Cnty. Fiscal Ct.*, 453 F.3d 681, 687 (6th Cir. 2006) (concluding that officers used excessive force when beating an arrestee after pepper spraying her: "the deputies' interest in an arrest could not have justified striking Shreve in the eye with a stick ten to twelve times while she was on the ground and 'out of it' due to the pepper spray"); *Grawey v. Drury*, 567 F.3d 302, 314 (6th Cir. 2009) (holding officers' use of pepper spray unreasonable when the arrestee had placed his hands against a wall and gave no indication of resistance); *Greene v. Barber*, 310 F.3d 889, 898 (6th Cir. 2002) (same when arrestee threatened no one's safety, did not flee, and was being restrained by other officers); *Atkins v. Township of Flint*, 94 F. App'x 342, 349 (6th Cir. 2004) (same where officers sprayed arrestee twice but did not inform him that he was under arrest or that he committed any crime, and did not warn him that they would use pepper spray); *Vaughn v. City of Lebanon*, 18 F. App'x 252, 267 (6th Cir. 2001) (same when officer conceded that "there was no cause to spray [the arrestee]").

At oral argument, Abdur-Rahim presented *Ciminillo v. Streicher*, 434 F.3d 461 (6th Cir. 2006) as her best—and only—Sixth Circuit case in the crowd-dispersal context. But we distinguish that case also as not clearly establishing the unlawfulness of Masters's conduct because the officer there fired beanbag propellants at point blank range, without provocation, at an individual's chest while he committed no crime but simply attempted to leave the scene with his hands above his head. *Id.* at 463. Besides employing a less forceful tactic, Masters did not face an individual who committed no crime, and it was an individual who had clearly signaled non-

resistance. Abdur-Rahim has not provided a Sixth Circuit case that would have put Masters on notice that it constitutes excessive force to pepper spray directly a lingering individual blocking an intersection after forty-five minutes of dispersal orders and warnings, followed by a general spray over a crowd.

Abdur-Rahim also suggests out-of-circuit cases to support her stance. We generally, however, disregard such authority because "we can't expect officers to keep track of persuasive authority from every one of our sister circuits." *Ashford v. Raby*, 951 F.3d 798, 804 (6th Cir. 2020). Regardless, those cases address distinguishable circumstances that don't clearly establish the specific right alleged here. *See e.g.*, *Nelson v. City of Davis*, 685 F.3d 867, 882–83 (9th Cir. 2012) (officers unreasonably fired pepper ball projectiles at a crowd when they did not first issue dispersal orders in a manner that the crowd could hear or warn that they would use force and they could have used other means to disperse the crowd); *Buck v. City of Albuquerque*, 549 F.3d 1269, 1289–90 (10th Cir. 2008) (officers unreasonably shot repeated rounds of pepper balls at protestor lying in the street); *Fogarty v. Gallegos*, 523 F.3d 1147, 1161 (10th Cir. 2008) (officers unreasonably shot protestor with pepper rounds, then "grabbed him, thrust him to the ground, and forcibly escorted him through a cloud of tear gas"); *Asociación de Periodistas de Puerto Rico v. Mueller*, 529 F.3d 52, 59–60 (1st Cir. 2008) (officers unreasonably used pepper spray without warning, sprayed individuals lying on the ground, and grabbed and kicked an individual suffering the effects of the spray); *Headwaters Forest Def. v. County of Humboldt*, 276 F.3d 1125, 1129–30 (9th Cir. 2002) (officers unreasonably used pepper spray on gathering of fewer than ten protestors when officers already had control over the protestors and could have painlessly dispersed them through other means).

With no existing precedent that "'squarely governs' the specific facts at issue" in this appeal, qualified immunity shields Masters from Abdur-Rahim's excessive force claim, and we reverse the denial of qualified immunity to Masters. *Kisela*, 138 S. Ct. at 1153 (quoting *Mullenix*, 136 S. Ct. at 309).

That leaves Abdur-Rahim's assault and battery claim under Ohio law. Masters defends, arguing that Ohio's own immunity law protects him. It is true that Ohio statutory immunity "is distinct from federal qualified immunity." *Stewart v. City of Euclid*, No. 18-3767, --- F.3d ----, 2020 WL 4727281, at *7 (6th Cir. Aug. 14, 2020); *see also Bodager v. Campbell*, No. 12CA828, 2013 WL 5741005, at *5 (Ohio Ct. App. Oct. 7, 2013); *Roe v. Franklin County*, 673 N.E.2d 172, 181 n.7 (Ohio. Ct. App. 1996) (Ohio statutory immunity and federal qualified immunity are "two separate and distinct concepts of governmental immunity."). Notably, Ohio statutory immunity "does not appear to require analysis of whether the underlying right has been clearly established in precedent, as does qualified immunity." *Stewart*, --- F.3d at ----, 2020 WL 4727281, at *7; *see also, e.g.*, *Evans v. Plummer*, 687 F. App'x 434, 444–46 (6th Cir. 2017).

Under Ohio law, officers enjoy immunity from tort liability unless they act "with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 2744.03(A)(6)(b). Ohio courts define "malicious purpose" as "the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct that is unlawful or unjustified." *Caruso v. State*, 737 N.E.2d 563, 567 (Ohio Ct. App. 2000). Ohio cases add further to our understanding by holding that "bad faith" implies "a dishonest purpose, moral obliquity, conscious wrongdoing, [or] breach of a known duty through some ulterior motive or ill will . . . ." *Cook v. Hubbard Exempted Vill. Bd. of Educ.*, 688 N.E.2d 1058, 1061 (Ohio Ct. App. 1996) (citation omitted). "Wanton misconduct is the failure to exercise any care toward those to whom

a duty of care is owed in circumstances in which there is great probability that harm will result." *Anderson v. City of Massillon*, 983 N.E.2d 266, 273 (Ohio 2012). And reckless conduct is "the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.*

"Generally, issues regarding malice, bad faith, and wanton or reckless behavior are questions presented to the jury." *Schoenfield v. Navarre*, 843 N.E.2d 234, 239 (Ohio Ct. App. 2005). A jury here could conclude that Masters acted recklessly or with malicious purpose in spraying Abdur-Rahim's face. *Cf. Wright v. City of Euclid*, 962 F.3d 852, 871 (6th Cir. 2020) (noting the risks of using pepper spray close to a target's face).

Accordingly, on de novo review this court cannot say whether Ohio statutory immunity shields Masters, prompting us to affirm the district court's denial of summary judgment on the assault and battery claim. The district court may determine on remand whether to exercise supplemental jurisdiction. *See Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996).

### III.

We REVERSE in part, AFFIRM in part and REMAND for further proceedings.