NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0509n.06
No. 25-3054

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

CRAIG MILLS, )
        Plaintiff-Appellee, )
)
v. )
)
MATTHEW CVITKOVICH, individually and in his )
official capacity as an employee of City of Xenia )
Police; CHIEF OF POLICE CHRIS STUTES, )
individually and in his official capacity as an )
employee of City of Xenia Police, )
        Defendants-Appellants. )

FILED
Oct 31, 2025
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

OPINION

Before: KETHLEDGE, LARSEN, and BLOOMEKATZ, Circuit Judges.

LARSEN, Circuit Judge. Craig Mills sued Officer Matthew Cvitkovich, claiming that Cvitkovich used excessive force by tasing him during an arrest. Cvitkovich moved for summary judgment, claiming qualified and statutory immunity. The district court denied the motion. Because Officer Cvitkovich is entitled to qualified and statutory immunity, we REVERSE.

I.

Craig Mills began his morning by taking his diabetes medication and running errands in Xenia, Ohio. As the day progressed, Mills' blood sugar dropped, and he began driving erratically in a manner resembling intoxication. He was observed nearly running another vehicle off the road and sitting through several traffic light cycles. After the City of Xenia Police Department received multiple calls about Mills' driving, the Department dispatched Officer Matthew Cvitkovich to address the situation. Meanwhile, Mills stopped at a corner where a bystander reached through

his window to remove his car keys from the ignition. Cvitkovich eventually located Mills' truck and ran the license plate number, which showed an up-to-date permit to carry a concealed weapon in the state of Ohio. Cvitkovich's bodycam captured the encounter.

Cvitkovich walked up to the truck window and found Mills slumped in the driver's seat with his right hand gripping the handle attached to the A-pillar. He informed Mills that the police department had received multiple calls about his driving and invited Mills to explain the situation. Mills responded lethargically that he was on his way home to Xenia. Next, Cvitkovich asked how much Mills had to drink, but Mills did not reply, instead turning his head toward the passenger side of the truck. Cvitkovich then asked Mills to step out of the vehicle. Mills did not immediately respond; instead, rubbing his forehead, adjusting his hat, and then arching his head and body toward the passenger side. Mills appeared to make an effort to get out of the vehicle without success, though he repeatedly turned his head toward the passenger side of the vehicle.

Cvitkovich told Mills that he could not remain in the car and asked Mills if he had a medical condition. Mills did not answer, but again shifted his body slightly toward the open door, while continuing to look repeatedly toward the passenger side. At this point, things began to escalate. Mills again looked toward the passenger side of the truck and extended his right arm toward the center console; Cvitkovich quickly told Mills not to reach around for anything. In Cvitkovich's experience, individuals with concealed weapons tend to keep them in the center console near where Mills extended his arm. Cvitkovich came in closer and put his hand on Mills' left arm, ordering him out of the truck. Mills shook his head and said "no," and Cvitkovich again told Mills that he must get out of the truck. Mills again said "no," and Cvitkovich radioed for backup to "step it up."

Mills then again moved his head and body to the right, in the direction of the center console. Cvitkovich put both hands on Mills' arm and prepared to forcibly remove him, while Mills said,

"get off me." As Cvitkovich began to pull, Mills pulled back, tensed his body, and crossed his arms over his chest. In response, Cvitkovich unholstered his taser and warned Mills that he would use the taser if he did not get out of the truck. Three seconds later, Cvitkovich simultaneously told Mills he was under arrest and fired his taser into Mills' stomach. Cvitkovich continued to tase Mills as Mills tried to pull the taser prongs out of his stomach. Cvitkovich then brought the taser close to Mills' body to perform a drive stun but backed up and continued to tase Mills from a distance after Mills swatted at him. When Cvitkovich came in for another drive stun, he pepper-sprayed Mills in the eyes and then pulled him out of the truck by his arm.

After handcuffing Mills with the help of additional officers who had arrived on the scene, Cvitkovich noticed Mills' face turning blue and asked another officer to administer Narcan. When paramedics arrived, Mills had regained enough lucidity to respond affirmatively to a paramedic who asked if he was diabetic. Mills was then taken to the hospital.

Mills later sued Cvitkovich for excessive force in violation of the Fourth Amendment and assault and battery under Ohio law.[1] Cvitkovich raised qualified immunity as a defense to the federal claim and statutory immunity as a defense to the state claims. He moved for summary judgment on all claims. The district court separately analyzed the excessive force claim with respect to Cvitkovich's use of the taser, his use of pepper spray, and his physical struggle to

---

[1] Mills also sued the City of Xenia Chief of Police, Chris Stutes, in his official capacity under theories of municipal liability and malicious prosecution by the City of Xenia. The district court dismissed both claims.

handcuff Mills. The court denied Cvitkovich's motion on the excessive force and related state claim as to the taser usage but granted his motion on all other claims. Cvitkovich timely appealed.

## II.

We must first consider our jurisdiction. We have jurisdiction to decide an interlocutory appeal from a decision denying an officer qualified immunity to the extent the appeal "turns on an issue of law." *Heeter v. Bowers*, 99 F.4th 900, 908 (6th Cir. 2024) (citation omitted). By contrast, "[w]e have no power of review where the officer's appeal is based on a quarrel with the plaintiff's record-supported facts, which the district court must adopt at summary judgment." *Id*. Mills argues that we lack jurisdiction over this appeal because the district court decided there was "an issue of material fact regarding whether Mills engaged in active resistance." Appellee Br. at 12 (quoting R. 34, Dct. Ct. Opn., PageID 434). But the parties here do not quarrel about questions of historical fact that would deprive us of jurisdiction—they do not dispute "What happened?" *Heeter*, 99 F.4th at 911. Indeed, Mills has no recollection of the events, so both parties, like the district court, rely primarily on "bodycam footage [that] accurately depicts . . . the relevant events." *Id*. at 910. "[W]e may utilize that footage to 'ensure [that] the district court properly constructed the factual record' and assessed the legal questions in line with that record." *Feagin v. Mansfield Police Dep't*, -- F.4th --, 2025 WL 2621665, at *2 (6th Cir. 2025) (second alteration in original) (quoting *Heeter*, 99 F.4th at 910). The legal questions this appeal presents concern "the meaning of the Fourth Amendment [and] the contours of clearly established Fourth Amendment principles." *Moore v. Oakland County*, 126 F.4th 1163, 1167 (6th Cir. 2025). Those questions fall squarely within our jurisdiction. *Id*.; *see also Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015) (holding that whether an officer's conduct violated clearly-established Fourth Amendment principles is a "pure question of law.").

III.

We review de novo the district court's denial of summary judgment on qualified immunity grounds. *Heeter*, 99 F.4th at 908. Summary judgment is proper when, viewing the facts in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citation modified). "[T]he plaintiff bears the burden of showing that the defendant's conduct violated a right so clearly established that a reasonable official in his position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct." *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002). In other words, a plaintiff must show both that (1) the officer violated a constitutional right and (2) the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the plaintiff fails to prove either element, the defendant is entitled to qualified immunity. *Moore*, 126 F.4th at 1167.

For a right to be clearly established, a plaintiff must show that "reasonable officers would have known their actions were unconstitutional under the specific circumstances they encountered." *Bell v. City of Southfield*, 37 F.4th 362, 367 (6th Cir. 2022). "[F]air notice" requires that "existing precedent must have placed the statutory or constitutional question beyond debate." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam) (citation modified). Generally, that requires the plaintiff to point to "closely analogous precedent with 'facts like the ones at issue here.'" *Feagin*, -- F.4th --, at *4 (citation omitted); *see also Bell*, 37 F.4th at 367–68. The specific facts of a case are especially important in the excessive force context where it is difficult for an

officer to determine how the relevant legal doctrine will apply to each new situation. *Rivas-Villegas*, 595 U.S. at 6.

Mills claims that Cvitkovich's use of the taser violated his Fourth Amendment right to be free from excessive force during an arrest or investigatory stop. *See Graham v. Connor*, 490 U.S. 386, 394 (1989). We need not decide whether a constitutional violation occurred because Mills has not shown that Cvitkovich's taser use violated clearly established law.

The district court gave short shrift to the clearly-established law analysis. Claiming that it had no "more than a cursory argument from Defendants" on the question, but offering none of its own, the court concluded that Cvitkovich's actions had violated clearly established law, citing one case in support. R. 34, Dct. Ct. Opn., PageID 435 (citing *Eldridge v. City of Warren*, 533 F. App'x 529, 535 (6th Cir. 2013)). This analysis was in error.

Qualified immunity is an affirmative defense, so it was Cvitkovich's duty to raise it. *Ohio Civ. Serv. Emps. Ass'n v. Seiter*, 858 F.2d 1171, 1174 (6th Cir. 1988). Cvitkovich did so, moving for summary judgment on that ground. *See Elliot v. Lator*, 497 F.3d 644, 649 (6th Cir. 2007) (noting that a motion for summary judgment is an appropriate way to raise the defense). When, as here, a defendant has raised qualified immunity, "the district court should not require the defendant to prove, upon penalty of denial of his motion, that the conduct plaintiff alleged did *not* violate clearly established law." *Ohio Civ. Serv. Emps. Ass'n*, 858 F.2d at 1174 (emphasis added) (citation omitted). Instead, "[o]nce the defense is raised, the *plaintiff* bears the burden of showing that the defendant's conduct violated a right so clearly established that a reasonable official in that position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct." *Barrett v. Steubenville City Schs.*, 388 F.3d 967, 970 (6th Cir. 2004) (emphasis added). So it was Mills' job, in response to the summary judgment motion, to come

forward with caselaw clearly establishing the unconstitutionality of Cvitkovich's actions. *See Stoudemire v. Michigan Dep't of Corrs.*, 705 F.3d 560, 568 (6th Cir. 2013) (explaining that outside the obvious case, a plaintiff on summary judgment must show "failure to adhere to a particularized body of precedent that squarely governs the case here" (citation omitted)); *Moore*, 126 F.4th at 1167 (noting that a plaintiff usually "must identify a case with facts similar enough that it squarely governs this one, what amounts to on-point caselaw that would bind a panel of this court" (citation modified)).

Mills' response cited one case (but offered little analysis) in support of his claim that he "had a clearly established right not to be tased under the circumstances." R. 31, Response Br., PageID 367 (citing *Browning v. Edmonson County*, 18 F.4th 516, 523 (6th Cir. 2021)). In reply, Cvitkovich spent a page of his brief explaining why *Browning* was distinguishable, and several more explaining why other cases, not raised by Mills, also did "not support that Plaintiff had a 'clearly established' right that was violated in this case." R. 32, Reply Br., PageID 411, 407–11. So Cvitkovich did more than was required to present his clearly-established argument to the district court. As for the merits of the argument, the cases Mills and the district court relied upon are distinguishable, so they do not clearly establish that Cvitkovich's use of a taser was unreasonable in the circumstances he confronted.[2]

Our cases hold that use of a taser is excessive when a plaintiff presents no danger and "do[es] nothing to resist arrest[] or is already detained." *Browning*, 18 F.4th at 525, 525–27 (describing past cases); *Feagin*, -- F.4th --, at *4. The use of a taser can also be excessive when a

---

[2] The district court relied exclusively on *Eldridge v. City of Warren*, 533 F. App'x 529, 535 (6th Cir. 2013). Ordinarily, unpublished caselaw cannot clearly establish a constitutional right. *Bell*, 37 F.4th at 367. But in *Browning*, a published opinion of our court, we concluded that "*Eldridge* accurately states the clearly established law." 18 F.4th at 527.

non-threatening individual resists arrest but does so only "passive[ly]," such as by merely failing to exit a vehicle. *Browning*, 18 F.4th at 526–27.

By contrast, "it is *not* excessive force for the police to tase someone (even multiple times) when the person is actively resisting arrest." *Rudlaff*, 791 F.3d at 641. Active resistance can take many forms. "[K]icking, flailing, and wriggling away" all count. *Roell v. Hamilton County*, 870 F.3d 471, 482–83 (6th Cir. 2017). But active resistance can also be a "verbal showing of hostility," a "deliberate act of defiance using one's own body," or "some other mechanism" of resistance. *Browning*, 18 F.4th at 527 (quoting *Eldridge*, 533 F. App'x at 535). For example, we found active resistance when an individual at a traffic stop "repeatedly pulled his left arm away from [an officer] to avoid the handcuff" after officers warned that he would be tased if he didn't comply. *Bell*, 37 F.4th at 368.

In addition, an officer is entitled to use some force when an individual poses a physical threat to the arresting officer. *Graham*, 490 U.S. at 396. Such situations may arise, for example, when the officer has a reasonable basis to believe that a suspect possesses a weapon and repeatedly reaches toward where an officer believes that weapon is stored. *See Browning*, 18 F.4th at 528–29 (describing *Watson v. City of Marysville*, 518 F. App'x. 390, 393 (6th Cir. 2013)).

We now turn to the question at hand: Has Mills met his burden to show, in light of clearly established caselaw, that every reasonable officer at the scene of his arrest should have known that use of a taser would amount to excessive force? A review of the facts and our cases convinces us that the answer is no.

First, as the district court concluded, Mills appeared visibly intoxicated when Cvitkovich arrived at the scene after reports of erratic driving. Our cases note that "[d]runk persons are generally unpredictable," which would reasonably cause an officer to be on guard. *Marvin v. City*

*of Taylor*, 509 F.3d 234, 246 (6th Cir. 2007). And although Mills did appear lethargic, his circumstances were quite different from those in *Landis v. Baker*, on which the district court relied to discount any threat. 297 F. App'x 453, 461 (6th Cir. 2008) (finding no threat to officers where suspect moved lethargically and was also unarmed, not "verbally resistant," and "was standing in at least a foot of muddy and cold water, surrounded by at least four officers"). To be sure, Mills' demeanor was actually caused by a hypoglycemic episode, not intoxication, but the qualified immunity analysis considers the perspective of a reasonable officer at the scene. Neither Mills nor the district court contends that Cvitkovich should have known about his medical emergency.

Second, Cvitkovich knew Mills had a permit to carry a concealed weapon. As the district court noted, that, combined with Cvitkovich's experience and training, provided him with a "reasonable suspicion" that Mills would be armed.[3] R. 34, Dct. Ct. Opn., PageID 433. We agree. *See Browning*, 18 F.4th at 528 (noting that the question is whether the officer had a "reasonable" or "objective basis" to believe the suspect was armed). When it comes to deploying non-lethal force, our cases do not require that officers "know for a fact" that the suspects they face are armed. R. 34, Dct. Ct. Opn., PageID 433.

Third, Mills reached for the center console—a location where Cvitkovich expected a weapon to be located based on his prior training and experience. "[R]each[ing] toward the center console of [a] vehicle" can "fairly suggest[] [the plaintiff] was trying to access a weapon." *Feagin*, -- F.4th --, at *6 (citing *United States v. Ledbetter*, 929 F.3d 338, 347 (6th Cir. 2019)); *see also Moore*, 126 F.4th at 1169 (finding that a reasonable officer could perceive a threat when the car's driver "shifted her hands toward the center console outside of the officer's view" and failed to turn off the ignition). It is true that Mills had previously made some attempts to comply with

---

[3] A later search revealed a semi-automatic handgun in Mills' center console.

Cvitkovich's command to exit the truck, but Mills had ceased any effort to move toward the exit when he reached toward the center console. *See Browning*, 18 F.4th at 527 (noting that a reasonable officer may interpret a suspect's change of behavior as an "escalation of aggression"). This was not the sort of situation where Cvitkovich could be expected to wait indefinitely for Mills to become compliant.

Fourth, Mills verbally refused to comply on three occasions when Cvitkovich asked him to leave the vehicle—showing more than "noncompliance alone." *Browning*, 18 F.4th at 527. Because Mills directly refused to exit *after* reaching toward the center compartment, Cvitkovich could reasonably assume that the situation would escalate. Fifth, Mills physically tensed his body and pulled back to prevent his removal from the car. "[P]hysical struggles with police" are a sign of active resistance. *Id.* (quoting *Thomas v. City of Eastpointe*, 715 F. App'x 458, 460 (6th Cir. 2017)). The district court focused on the fact that Cvitkovich said the words "you're under arrest" as he tased Mills, but Cvitkovich asked Mills to exit the car numerous times before this point and warned him that he would be tased if he did not comply. And "we look comprehensively at 'any relevant events,'" not just the moment of force. *Feagin*, -- F.4th --, at *7 (quoting *Barnes v. Felix*, 605 U.S. 73, 79 (2025)).

Whether or not these factors would have justified Cvitkovich's use of force, no clearly established law shows that Cvitkovich's taser-deployment was unreasonable. Mills' actions fall well within the "zone of twilight" between active and passive resistance. *Feagin*, -- F.4th --, at *5. And in such cases, officers are entitled to qualified immunity. *Id.*; *see also Rudlaff*, 791 F.3d at 644 (When "qualified immunity operates in the hazy border between excessive and acceptable force," the "proper course is to grant summary judgment to the officers." (citation modified)).

Mills argues that our opinions in *Browning v. Edmonson County* and *Eldridge v. City of Warren* should have put Cvitkovich on notice that his use of a taser violated clearly established law. We disagree. In *Browning*, police tased an unconscious minor, who was slumped in the backseat of a crashed car. 18 F.4th at 521–22. Although the officer may have "merely had a suspicion" that the minor was armed, we found it "important[]" that the minor made no movement that the officer himself interpreted "as verbal hostility or physical resistance." *Id.* at 524; *see also id*. at 526 (explaining that the minor's "unconscious state shows that he made no threatening statement, and made no movements that could be considered hostile, aggressive, or threatening"). Here, by contrast, Mills did move in a manner that a reasonable officer could have interpreted as threatening. Mills' seeming intoxication and movement toward the center console could reasonably give cause for alarm, especially when he possessed a concealed carry license. And unlike the plaintiff in *Browning*, Mills did more than simply ignore or fail to respond to Cvitkovich. He twice refused Cvitkovich's commands to exit the truck and then resisted Cvitkovich's efforts to tug him from the truck by pulling backwards, tensing his body, and crossing his arms over his chest.

The same facts distinguish *Eldridge*. 533 F. App'x at 529. There, the police tased a man who lethargically clutched his car's steering wheel and provided polite but sometimes non-responsive answers to an officer's request that he exit the vehicle. *Id*. at 530–31 (describing the plaintiff repeatedly saying "I'm fine" and twice saying "I'm trying"). Unlike the driver in *Eldridge*, Mills, who had a concealed-carry permit, reached toward the center console, thrice verbally refused to get out of the car, and pulled back when Cvitkovitch sought to remove him from the vehicle.

To the extent that Mills argues that multiple uses of the taser violated clearly established law, additional tasing does not constitute excessive force when the first tasing does not subdue the arrestee. *See Rudlaff*, 791 F.3d at 641. Mills tried to remove the taser prongs, and Cvitkovich could reasonably assume that he needed to use additional rounds to immobilize Mills. *Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012). Once Mills was immobilized, the tasing ended.

On the record before us, no clearly established Fourth Amendment violation occurred.

IV.

*State Law Claims*. Cvitkovich appeals the district court's denial of state-law statutory immunity for the claim of assault and battery as to his taser-usage. Because the claim rests on the same questions of material fact as his federal claims, we may review the state immunity defense "through the lens[] of the federal qualified immunity analysis." *Chappell v. City of Cleveland*, 585 F.3d 901, 907 n.1 (6th Cir. 2009). Mills' claim to statutory immunity here "stands or falls with [his] federal qualified immunity defense." *Hopper v. Plummer*, 887 F.3d 744, 760 (6th Cir. 2018). Because Cvitkovich is entitled to federal qualified immunity, he is also entitled to state statutory immunity.

V.

We REVERSE the district court's order denying qualified and statutory immunity.