RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0061p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

RYAN FRANKE,

*Plaintiff-Appellant*,

*v.*

KENNY JANES, individually,

*Defendant-Appellee*.

No. 25-5105

─────────────

Appeal from the United States District Court for the Western District of Kentucky at Louisville.
No. 3:23-cv-00119—Rebecca Grady Jennings, District Judge.

Argued:  October 23, 2025

Decided and Filed:  March 2, 2026

Before: MOORE, BUSH, and DAVIS, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:**  Rob Astorino, Jr., STEIN WHATLEY ASTORINO, PLLC, Louisville, Kentucky, for Appellant.  Mark A. Osbourn, BUSH & OSBOURN, PLLC, Louisville, Kentucky, for Appellee.  **ON BRIEF:**  Rob Astorino, Jr., STEIN WHATLEY ASTORINO, PLLC, Louisville, Kentucky, for Appellant.  Mark A. Osbourn, BUSH & OSBOURN, PLLC, Louisville, Kentucky, for Appellee.

─────────────

## OPINION

─────────────

DAVIS, Circuit Judge.  In March 2022, police handcuffed and detained Ryan Franke outside a local recreational center on suspicion of domestic violence against his ex-wife.  After handcuffing Franke, Officer Kenny Janes escorted him toward a police vehicle.  During the walk to the vehicle, Franke yelled out to nearby family members, which led Janes to apply pain

compliance techniques to keep Franke moving.  Later, Janes allegedly twisted Franke's wrist, causing injury.  Franke brought this civil rights action, claiming that Janes used excessive force.  The district court found that Janes is protected by qualified immunity and granted him summary judgment on that basis.  Because there is a genuine dispute of material fact concerning the need for the amount of force applied, we AFFIRM IN PART, REVERSE IN PART, and REMAND for further proceedings.

**I.**

*A.  Factual Background*

In March 2022, Hillview Police Officer Kenny Janes was dispatched to a local community center on a "fight call," a call that indicates "two or more parties are involved in a physical altercation."  (Janes Dep., R. 26-7, PageID 154–55).  Before Janes's arrival, Ryan Franke was at the community center attending his daughter's basketball game.  Following the game, Franke and his former wife got into an argument.  Afterward, when Franke was on his way to the parking lot, he got into a physical altercation with a man who had laughed at Franke's interaction with his ex-wife.  Franke and the man first exchanged words, then exchanged blows, which Franke says were in self-defense on his part.  Someone called the police.

Janes was one of several officers who responded to the scene.  Janes, who spoke to a few people on the scene before approaching Franke, wore a body camera that recorded his vantage point.  Shortly after Janes arrived, Franke can be heard saying, "He tackled me, and I f*cking beat the sh*t out of him."  (Bodycam, 0:00:48–0:00:51).  Around the same time, a bystander speaking to Janes gave his account of the fight between Franke and the other man.  According to this bystander, the other man had attacked Franke.

What happened next led to Franke's detention.  Franke's ex-wife (and her current husband) walked toward Janes to speak with him.  She told Janes about her argument with Franke and described Franke as "mad" about something basketball-related.  (Bodycam, 0:01:39–0:01:42).  She further relayed that during her argument with Franke, he had told her (1) to "shut the f*ck up or I'mma knock your teeth out your throat"; (2) "You heard what the f*ck I said, back the f*ck up"; and (3) that he was going to "knock [her] down, knock [her] out."  (*Id.* at

0:01:42–0:02:15).   As Janes spoke with Franke's ex-wife, he noticed redness on her neck and asked her if Franke had touched her.  She stated that Franke had "pushed [her]" "several times," and her husband chimed in that Franke had "shoved both of [them]."  (*Id.* at 0:02:17–0:02:22).  She denied that Franke "grabbed" her neck, but she indicated (while gesturing with her arm) that Franke "knocked his arm into [her]" and pushed her.  (*Id.* at 0:02:47–0:02:56).  She also advised Janes that she and Franke had "been in court before" because Franke threatened her, "pushed [her]," and "spit on her car, things like that."  (*Id.* at 0:02:55–0:03:20).

Sergeant Wyatt Rossell then approached and asked Franke's ex-wife if she and Franke had any "EPOs or DVOs,"[1] which she denied.  (Bodycam, 0:03:38–0:03:42).  Speaking to Rossell, Janes pointed out the redness on the ex-wife's neck, an injury the ex-wife attributed to Franke.  She also stated that she wanted to press charges, reiterated Franke's alleged statement about knocking her teeth from her throat, and indicated that he had "done things before," including that she has "had a broken toe before, [and] he slammed [her] phone so [she] can't call anybody for help."  (*Id.* at 0:03:55–0:04:12).  After a short back-and-forth, Rossell instructed Janes to detain Franke.

Armed with the above information, Janes approached Franke and ordered him to put his hands behind his back.  Franke simultaneously asked why and "for what, sir?"  (Bodycam, 0:04:35–0:04:45).  Janes grabbed Franke's wrist and advised him he was being handcuffed "for domestic violence."  (*Id.* at 0:04:44–0:04:49).  Franke denied doing anything to his ex-wife, and Janes began patting down Franke, asking him if he had anything on his person that would "stick [him]" or otherwise "piss [Janes] off."  (*Id.* at 0:05:24–0:05:30).  Franke retorted, "You're pissing me off," before Janes handcuffed and escorted Franke to a police vehicle.  (*Id.* at 0:05:30–0:05:32).

---

[1]Kentucky courts may issue a "domestic violence order" ("DVO") after an evidentiary hearing "if a court finds by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur."  KY. REV. STAT. § 403.740(1); *see Davis v. City of Covington*, No. 2:23-066, 2024 WL 2140220, n.4 (E.D. Ky. May 13, 2024) (explaining difference between DVO and emergency protection order ("EPO")).  An EPO, on the other hand, may issue to cover the time until the evidentiary hearing if the court finds there is "an immediate and present danger of domestic violence and abuse."  KY. REV. STAT. § 403.730(2)(a); *Davis*, 2024 WL 2140220, n.4.

En route to Janes's vehicle, Franke denied "put[ting] [his] hands on" his ex-wife, prompting Janes to respond that "the marks on her neck say otherwise, man." (Bodycam, 0:05:56–0:06:03). "Hey," Franke shouted toward his nearby family members, "they're saying she's got marks on her neck! I didn't touch her neck!" (*Id.* at 0:06:03–0:06:07). As Franke yelled to his family, Janes lifted Franke's left arm, said "Let's go," and hastened the pace toward his police vehicle. (*Id.* at 0:06:06–0:06:08).

The two then made overlapping statements about what happened as Janes ushered Franke toward the police vehicle. Franke repeatedly declared that Janes was "hurting" him and accused Janes of "manhandling" him. (Bodycam, 0:06:10–0:06:38). He also denied "pulling away" from Janes. (*Id.*). Janes, on the other hand, told Franke to "calm down," denied manhandling Franke, and ordered him several times to "stop pulling away" from him. (*Id.*). This exchange is heard in the bodycam footage, but what happened physically is mostly obscured. According to Franke, at some point during the walk, Janes put him in a "half nelson," causing him to bend forward with his hands raised up behind his back. (Franke Dep., R. 26-2, PageID 98, 100). At one point, Franke's flannel shirt rustled on screen—but it is difficult to discern whether that is from their quickened pace or if this is the point Janes put Franke in a half nelson. The camera angle and the competing statements by Franke and Janes also make it difficult to tell whether Franke "pull[ed] away" from Janes. (Bodycam, 0:06:09–0:06:27). Janes cannot be seen twisting Franke's wrist.

Unsurprisingly, once the dust settled, Franke and Janes continued to paint different pictures of what happened. For his part, Franke testified that Janes "put[] [Franke] in a half nelson, which kind of shove[d] [him] forward." (Franke Dep., R. 26-2, PageID 98). According to Franke, the bodycam shows Janes putting him in a half nelson when Janes "accuse[s] [Franke] of pulling away from him," at which point Franke claims Janes "grabs [Franke's] wrist and torques it to put [him] up against the Durango." (*Id.*) Janes, on the other hand, testified that Franke "pulled away from [him]" and made "sharp, quick jerking movements towards the parking lot away from" Janes. (Janes Dep., R. 26-7, PageID 162–63). In response, Janes says he "used pain compliance" to keep Franke moving forward. (*Id.* at PageID 163).

Once in the back of Janes's police car, Franke repeatedly complained of wrist and shoulder pain, so Janes loosened the handcuffs. Meanwhile, other officers reviewed video

footage and determined that Franke had not assaulted his ex-wife.  Officers advised Franke not to return to the community center and allowed him to leave without charges.  Franke eventually had surgery on his right wrist to repair the damage.

*B.  Procedural Background*

Franke sued Janes, raising three claims: a Fourth Amendment excessive-force claim brought under 42 U.S.C. § 1983, and negligence and battery claims under Kentucky law.  After the completion of discovery, Janes moved for summary judgment on all claims.  Granting summary judgment to Janes, the district court found that the totality of the circumstances favored Janes's use of force, entitling him to qualified immunity on Franke's § 1983 claim.  It also found that state qualified immunity protected Janes from liability on Franke's state battery claim, and that a negligence claim could not co-exist with a Fourth Amendment excessive force claim.  Franke now appeals.

**II.**

"We review grants of summary judgment and qualified immunity de novo." *Novak v. Federspiel*, 140 F.4th 815, 820 (6th Cir. 2025).  To obtain summary judgment, the movant must show there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  In the context of qualified immunity, granting summary judgment is inappropriate if "the facts alleged and evidence produced, viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that the officer violated a clearly established constitutional right." *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020).

Video evidence "capturing the events in question," like the bodycam footage here, "add[s] [a] wrinkle" to the usual summary-judgment standard. *Shumate v. City of Adrian*, 44 F.4th 427, 438 (6th Cir. 2022).  Specifically, a court "may not adopt a 'version of the facts for purposes of ruling on a motion for summary judgment' that 'blatantly contradict[s]' the asserted version of events such that 'no reasonable jury could believe it.'" *Raimey v. City of Niles*, 77 F.4th 441, 447 (6th Cir. 2023) (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  Any "gaps or uncertainties" in the video, however, are construed in the nonmovant's favor. *Naji v. City of Dearborn*, 120 F.4th 520, 523 (6th Cir. 2024) (citation omitted).

**III.**

*A. Section 1983 Excessive Force and Qualified Immunity*

Franke argues that the district court should not have granted summary judgment because there are genuine disputes of material fact relevant to the objective reasonableness of Janes's use of force. We agree.

Qualified immunity protects government officials from suits for damages unless a plaintiff shows "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Which prong to address first is left to our discretion. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). We start with the violation prong.

*1. Constitutional Violation*

The question here is whether Janes used "gratuitous force" on Franke when he allegedly twisted Franke's wrist. *See King v. City of Rockford*, 97 F.4th 379, 398 (6th Cir. 2024). To be sure, officers may "use some degree of physical coercion or threat" to effectuate an arrest or investigatory stop. *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1004 (6th Cir. 2024). Still, any such use of force must remain reasonable, judged objectively. *Saalim*, 97 F.4th at 1004.

The reasonableness of an officer's use of force depends on the totality of the circumstances. *Barnes v. Felix*, 605 U.S. 73, 80 (2025). But three main factors frame the inquiry: "the severity of the crime at issue"; "whether the suspect poses an immediate threat to the safety of the officers or others"; and "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

When reviewing an officer's use of force, we are careful not to scrutinize law enforcement action using 20/20 hindsight and "in the peace of [our] chambers." *Graham*, 490 U.S. at 396. We recognize that officers are often embroiled in "tense, uncertain, and rapidly evolving" circumstances that require "split-second judgments" about the degree of force called

for in a particular situation. *Id.* at 396–97. So we consider the reasonableness of an officer's conduct through an objective lens, looking at the circumstances from the perspective of a reasonable officer on the scene. *Id.* at 396. In doing so, we first consider the facts established in any video evidence. *Raimey*, 77 F.4th at 447 (citing *Scott*, 550 U.S. at 380). We then fill any gaps in the video with evidence viewed in the nonmovant's favor. *Naji*, 120 F.4th at 523. And finally—taking all those facts together—we look at the officer's conduct through an objective lens. *Graham*, 490 U.S. at 396.

The district court found that each *Graham* factor weighed in Janes's favor. We agree in part. But, viewing the evidence in the light most favorable to Franke, there are genuine disputes of material fact on the threat-to-safety and active-resistance factors.

### a.     Severity of the Crime

As an initial matter, "conduct that is not a violent or serious crime does not permit an officer to use increased force absent other factors." *King*, 97 F.4th at 394 (citation modified). Here, Janes investigated two crimes: (1) the initial "fight call" involving a potential assault and (2) Franke's alleged domestic violence against his ex-wife.

### i.     Assault

Franke first quarrels with the district court's finding that Janes's use of force was warranted based on his call to investigate an assault. The existence of some level of violence associated with the underlying crime is a hallmark of weighing this factor in an officer's favor. *See Graves v. Malone*, 810 F. App'x 414, 422 (6th Cir. 2020). A potential assault fits in this category. *See id.*; *Correa v. Simone*, 528 F. App'x 531, 534 (6th Cir. 2013).

Like the officers in *Graves* and *Correa*, Janes responded to a police broadcast for a potential assault, here a "fight call." (Janes Dep., R. 26-7, PageID 154). The nature of the call, combined with Franke's brutal proclamation that he had "f*cking beat the sh*t out of" a man who attacked him, could lead a reasonable officer to believe that Franke was recently involved in violent conduct (even if he was defending himself), and that his behavior could escalate.

(Bodycam, 0:00:48–0:00:51).  *See Feagin v. Mansfield Police Dep't*, 155 F.4th 595, 605 (6th Cir. 2025).

Franke says Janes did not consider Franke's expletive-laden statement as a basis for his arrest until Janes spoke with the ex-wife.  But under the circumstances, a reasonable officer could consider such a statement evidence of potential violence.  Moreover, we do not consider Franke's statement in a vacuum; we consider all that was included in Janes's knowledge at the time he used the force.  So excising the information Janes received from Franke's ex-wife is inappropriate.  And despite his burden to show that Janes is not entitled to qualified immunity, Franke points to no affirmative evidence showing Janes was unaware of Franke's remark at the time of his use of force.  *See Clark v. Stone*, 998 F.3d 287, 298 (6th Cir. 2021).  Thus, we agree with the district court that the circumstances presented during the assault investigation gave Janes reason to believe that Franke engaged in physical violence that could justify the use of some degree of force.  *See Saucier v. Katz*, 533 U.S. 194, 205 (2001) (explaining that officer "would be justified in using more force than in fact was needed" if officer reasonably but mistakenly believed suspect "likely to fight back"), *overruled in part on other grounds by Pearson*, 555 U.S. at 223.

> ii.     *Domestic Violence*

Beyond the assault, Franke's ex-wife's allegations spurred Janes to investigate whether Franke committed domestic violence.  Domestic-violence calls can also often provide grounds to use force.  *See Kapuscinski v. City of Gibraltar*, 821 F. App'x 604, 606, 609–10 (6th Cir. 2020) (weighing severity factor "decisively" in officer's favor after "respond[ing] to a domestic violence call" with a "crazed" defendant with bloodshot eyes who was "covered in sweat," squeezing a woman's "neck between his thighs," and screaming about killing her); *Goodrich v. Everett*, 193 F. App'x 551, 552, 555 (6th Cir. 2006) (determining circumstances supported officer decision to use force after officers received "a call for assistance" with defendant suspected of "aggravated domestic assault, a violent offense" that resulted in the victim sustaining serious injuries).  And from a reasonable officer's perspective, Janes's observation of red marks on Franke's ex-wife's neck, her statements about recurrent domestic-violence issues, her claims along with her husband's that Franke had pushed them, and Franke's violent

statements sufficiently evinced the possibility that Franke might become violent and that force might be necessary to control the situation.  Accordingly, this factor favors Janes.

### b.     *Immediate Threat to Safety*

Franke next argues that the district court erroneously found no genuine dispute of material fact that he posed a threat to the safety of those at the scene.  We agree.

The second factor asks if the suspect posed an immediate threat to the safety of the officers or others.  *Graham*, 490 U.S. at 396.  Here, gaps in the video evidence render the district court's conclusions on this factor speculative.  *See Hughey v. Easlick*, 3 F.4th 283, 292 (6th Cir. 2021) (reversing grant of summary judgment to officer based on "obscured" dashcam footage where "the handcuffing [was] not visible" and court could not "discern whether *any* violence occurred.").  The district court found that Franke, who was "considerably agitated," "stopped walking, shouted towards his relatives, and struggled against Janes's guidance towards the cruiser."  (Op. & Ord., R. 55, PageID 567).  The court further found that when Janes lifted Franke's arm, Franke told Janes to "[g]et off of" him and to "quit doing that[.]"  (*Id.* (quotation marks omitted)).  And the district court pointed out that Janes had repeatedly ordered Franke to "stop pulling away."  (*Id.*).

To start, there is no doubt Franke grew more agitated as events unfolded.  Once handcuffed, Franke's tone became more aggressive and irritated (though he briefly calmed down as he and Janes moved away from the crowd), he repeatedly swore and denied touching his ex-wife, and he said Janes was "pissing [him] off."  (Bodycam, 0:05:00–0:05:32).  Plus, once Janes mentioned the marks on the ex-wife's neck, Franke became more agitated.  There is also no dispute that Franke told Janes to get off him and to stop "doing that," or that Janes repeatedly ordered Franke to stop pulling away.  (*Id.* at 0:06:07–0:06:30).  In the district court's view, a reasonable officer could find that Franke "posed a threat when he was verbally and physically combative" and appeared "uncooperative with Janes's commands during the walk to Janes's cruiser."  (Op. & Ord., R. 55, PageID 567).

But there are genuine disputes of material fact on two central issues: (1) whether Franke stopped walking; and (2) whether Franke struggled against Janes's guidance to the police

vehicle. On the first issue, the video appears to show Franke still moving when he yells to his family. (*See* Bodycam, 0:06:04–0:06:06). This raises a factual question of whether Franke was disregarding Janes's commands or being verbally or physically combative to the point that he could be viewed as an immediate threat. Resolution of that factual question must be left to a jury.

On the second issue, there is no way to tell from the video whether Franke actually struggled against Janes's movements to his police vehicle. *See Hughey*, 3 F.4th at 292. True, Janes repeatedly says that Franke was pulling away from him. But overlapping those statements are Franke's own declarations that he was *not* pulling away from Janes and that Janes was "manhandling" and "hurting" him. (Bodycam, 0:06:06–0:06:30). And because what happened can be heard only on the bodycam, but not seen, the court must fill in any gaps with evidence Franke has offered that is favorable to him. *See Naji*, 120 F.4th at 523. The district court did not perform this last step. *See Hughey*, 3 F.4th at 292–93. Had it done so, it would have accepted Franke's testimony that when Janes "put[] [Franke] in a half nelson," the move "shove[d] [him] forward," which, he says, is what led Janes to "accuse [Franke] of pulling away from him" and then "torque[]" Franke's wrist. (Franke Dep., R. 26-2, PageID 98; *see id.* at PageID 100). Franke's version of events creates a disputed question for the jury on whether he exhibited any threatening behavior.

For his part, Janes appears to adopt the district court's analysis that Franke posed an immediate safety threat. (Appellee Br., ECF 21, 34–35). The district cited three cases to support favoring Janes on this factor: (1) *Siders v. City of Eastpointe*, 819 F. App'x 381 (6th Cir. 2020); (2) *Bolden v. City of Euclid*, 595 F. App'x 464 (6th Cir. 2014); and (3) *Farris v. Oakland Cnty.*, 96 F.4th 956 (6th Cir. 2024). The first two are distinguishable for the same reason: The force used by the officers in *Siders* and *Bolden* happened *before* the suspects were handcuffed. *See Siders*, 819 F. App'x at 383–86; *Bolden*, 595 F. App'x at 466. That matters because circuit precedent bars officers from using "additional gratuitous force once a suspect has been neutralized." *King*, 97 F.4th at 398 (citation omitted); *see Morrison v. Bd. of Trustees of Green Twp.*, 583 F.3d 394, 408 (6th Cir. 2009) (observing that for over two decades it has been "clearly established in this circuit that 'a totally gratuitous blow'" to a handcuffed and non-resisting

suspect violates the Fourth Amendment) (citation omitted). And this makes sense because the freedom of movement afforded an uncuffed suspect raises the potential for a dangerous interaction with officers. But a cuffed suspect is significantly limited in the physical actions he may take and is more susceptible to injury given the suspect's inability to move his arms and hands in even a defensive fashion. So a gratuitous shove, twist, or blow can have serious consequences.

The district court cited the third case, *Farris*, for the proposition that "a reasonable officer could believe that Franke posed a threat when he was verbally and physically combative and appeared to be uncooperative with Janes's commands during the walk to Janes's cruiser." (Op. & Ord., R. 55, PageID 567). But this reliance is undermined by the existence of disputed material facts; namely, whether Franke was "physically combative," "uncooperative," and otherwise posed a threat to Janes, or whether Janes's actions *caused* Franke's apparent "pulling away." (*Id.*). After all, Franke testified that Janes's half nelson move "shove[d] [Franke] forward" and led Janes to declare that Franke was pulling away. (Franke Dep., R. 26-2, PageID 98). This, Franke says, is what led Janes to grab Franke's wrist and painfully twist it. Janes's body camera footage does not blatantly undermine Franke's testimony. Yet from Janes's perspective, Franke made "sharp, quick jerking movements" and "pulled away" from him, necessitating his use of "pain compliance" to keep Franke moving. (Janes Dep., R. 26-7, PageID 162–63). All we have is conflicting testimony regarding whether Franke posed an immediate threat to Janes's safety. It is improper for us to make credibility determinations or weigh competing evidence, so we leave that determination for the jury. *See Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994).

### c.    Resistance or Attempt to Flee

We also agree with Franke that the district court erred when it found there was no genuine dispute of material fact that he resisted Janes's attempts to detain him. Active resistance, which the district court focused on, requires "some outward manifestation—either verbal or physical" that suggests "volitional and conscious defiance." *Shumate*, 44 F.4th at 446 (quoting *Eldridge v. City of Warren*, 533 F. App'x 529, 534 (6th Cir. 2013)). It is typically "characterized by physical force, a show of force, or verbal hostility coupled with failure to

comply with police orders." *King*, 97 F.4th at 395 (citation omitted). Though verbal hostility can signify active resistance, verbal jabs and non-threatening language will not cross the threshold into active resistance without overtly threatening speech or conduct. *Shumate*, 44 F.4th at 447–48. All this stands in contrast to "[m]ere passive resistance," which involves a "lack of physical resistance or verbal antagonism." *King*, 97 F.4th at 396 (citations omitted).

Here, the district court found that this third factor "weigh[ed] at least slightly in Janes's favor." (Op. & Ord., R. 55, PageID 570). It concluded that Franke's words, though vulgar, were "not 'overtly threatening.'" (*Id.* at PageID 569 (citation omitted)). We agree with this conclusion. About two minutes elapsed between Janes ordering Franke to put his hands behind his back and Franke entering the police vehicle. Though during those 120 seconds Franke used expletives and expressed frustration with the situation, he never threatened Janes or others, nor did he use language that could be interpreted as "volitional" or "conscious defiance." *See Saalim*, 97 F.4th at 1004–05 (citation omitted). So we agree with the district court that Franke's language (alone) did not show active resistance.

The district court then found that the bodycam footage showed Franke "paus[ing] and separat[ing] his body from Janes's to yell towards his family," and, thus, although his "resistance in this case might have been slight," the bodycam showed that he "engaged in at least some physical defiance of Janes's instructions [while] moving him toward his cruiser." (Op. & Ord., R. 55, PageID 569). But the court must take the facts in the light most favorable to Franke unless video evidence blatantly contradicts his version. And there is no blatant contradiction here. Viewed in the light most favorable to Franke and allowing all reasonable inferences in his favor, the video depicts Franke continuously walking and never pausing when yelling to his family. Although the district court concluded otherwise, a short window in the video shows Franke still moving forward. The district court also noted Janes's repeated instructions for Franke to stop pulling away and Franke's repeated assertions that he was not doing so. Yet, here, we must accept that it was Janes's conduct that propelled Franke away from Janes, not any resistance on Franke's part. And that means there are genuine issues of material fact on whether Janes's use of force was gratuitous. *See Butler v. City of Detroit*, 936 F.3d 410, 425 (6th Cir. 2019) (affirming denial of qualified immunity where plaintiff "was fully cooperative and yet was

gratuitously 'slammed' into the wall"). Because much of the physical interaction between Franke and Janes is obscured from view due to the filming perspective, what happened is not fully discernible. So, it is unclear on what undisputed basis the district court could conclude that Franke paused, that he offered any resistance, and what, if any, effect Janes's actions may have had on Franke's so-called "pulling away." *See Hughey*, 3 F.4th at 292 (reversing grant of summary judgment to officer when the district court relied on dashcam footage to find no genuine dispute of material fact on whether he used excessive force, despite the plaintiff's "entire body save her right elbow [being] obscured"). For these reasons, the facts should be weighed by a jury.

Three cases discussed by the district court, *McCaig v. Raber*, 515 F. App'x 551 (6th Cir. 2013) (cited by Franke); *Rudlaff v. Gillispie*, 791 F.3d 638 (6th Cir. 2015); and (3) *King v. City of Rockford*, 97 F.4th at 379, do not sway our view.

In *McCaig*, we found no active resistance where an officer yelled an order "so loudly that it hurt McCaig's ear" and caused him to "jerk[] away." *Id.* at 553 (quotation marks omitted). Though the district court here found that Janes "did nothing similar" to cause Franke to "reflexively pull away," Franke says Janes's actions caused him to involuntarily lurch forward. (Op. & Ord., R. 55, PageID 569). Importantly, Franke's version is not blatantly contradicted by the video. Indeed, the video does not clearly depict what Janes did or did not do. The differing accounts heard (but not seen) in the video, and provided in Franke's and Janes's depositions, present jury questions.

Citing *Rudlaff*, the district court next correctly observed that the Fourth Amendment does not have a *de minimis* resistance exception. 791 F.3d at 643. But we question its finding of "slight" resistance and that the video shows Franke "engaged in at least some physical defiance of Janes's instructions moving him toward his cruiser." (Op. & Ord., R. 55, PageID 569). To reiterate, almost nothing can be seen on the video because of the camera angle and Franke's positioning. Assuming Franke's alleged pause is part of this finding of slight resistance, its existence is disputed. And the audio from the bodycam raises questions about whether Franke "engaged in at least some physical defiance," and whether Janes's use of pain compliance caused Franke to involuntarily "pull away" from Janes. (*Id.*) Also, *Rudlaff*'s utility is tempered by the

fact that it involved an unhandcuffed individual who resisted being handcuffed.  *See Rudlaff*, 791 F.3d at 640.  As discussed, Franke was already handcuffed during the walk to Janes's vehicle.

Then, when Janes pressed Franke against the police vehicle, Franke claims—but the viewer cannot see—that Janes was "manhandling" and "hurting" Franke.  (Bodycam, 0:06:15– 0:06:30).  Because the video is not conclusive on what happened, the court must look to other evidence to fill those gaps.  Here, those gaps are filled with disputed testimony that creates a genuine issue of material fact.  *King* supports this conclusion.  The relevant part of that case affirmed the district court's denial of summary judgment where "the entire interaction" between the officers and the individual "occur[red] outside the view of the dash camera footage."  *King*, 97 F.4th at 398.  Genuine issues of material fact thus preclude summary judgment for Janes.[2]

### 2.      *Clearly Established*

Janes did not address the clearly established prong below (other than with general statements of case law), and now on appeal he says Franke's rights were clearly established. Franke, nonetheless, addresses the issue, as is his burden.  *See Clark*, 998 F.3d at 298.  And, regardless of Janes's acknowledgement that the law is clearly established, we may address the clearly established prong because "whether the law is clearly established presents a purely legal question that we need not leave to the district court to resolve."  *Palma v. Johns*, 27 F.4th 419, 442 n.6 (6th Cir. 2022), *abrogated on other grounds by Barnes*, 605 U.S. at 83, *as recognized by Booth v. Lazzara*, 164 F.4th 581, 593 (6th Cir. 2026).  Plus, the parties' formulation defines the right "at too high a level of generality."  *Finley v. Huss*, 102 F.4th 789, 808 (6th Cir. 2024) (citations omitted).  So we consider it prudent to define the right "with enough specificity to address 'whether the official acted reasonably in the particular circumstances that he or she faced.'"  *Id.* (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63–64 (2018)).

---

[2]The parties discuss Franke's surgeon, Dr. Amitava Gupta, and Janes's police practices expert, John Combs.  These individuals were the subject of motions in limine that the district court denied as moot when it granted summary judgment to Janes.  We decline to address the parties' arguments about Dr. Gupta and Combs and leave it to the district court to address them in the first instance, should those motions be renewed.  *See Tilley v. Kalamazoo Cnty. Rd. Comm'n*, 777 F.3d 303, 314 (6th Cir. 2015) (declining to address issue before district court has chance to address in first instance; *Taft Broad. Co. v. United States*, 929 F.2d 240, 243 (6th Cir. 1991) ("[I]ssues not litigated in the trial court are generally not appropriate for appellate consideration in the first instance.").

A police officer violates a clearly established right when, at the time the officer committed the challenged conduct, "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Zakora v. Chrisman*, 44 F.4th 452, 465 (6th Cir. 2022) (citation omitted). Officers are "not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Rudlaff*, 791 F.3d at 644. And although "a case on all fours with the instant fact pattern" is not necessary to show a clearly established right, a plaintiff must identify "a sufficiently analogous case (or cases) from which a reasonable official would understand that what he is doing violates that right." *Pleasant View Baptist Church v. Beshear*, 78 F.4th 286, 295 (6th Cir. 2023) (citation modified).

Here, assuming the factual disputes in Franke's favor, the relevant question is whether it was clearly established in March 2022 that a police officer violates a person's rights during an investigatory detention by using advanced pain compliance techniques—here a half nelson and painfully twisting a wrist with enough force to cause an injury that required surgery—on a handcuffed individual not resisting arrest. Binding caselaw shows that it was.

In 2021, we held in *Hughey v. Easlick* that it was "gratuitous violence" for an officer to "vigorously yank[]" an individual's arm as he handcuffed her, tearing her rotator cuff. 3 F.4th at 292. Next, in *Morrison v. Bd. of Trustees of Green Twp.*, we reinforced that "gratuitous violence inflicted upon an incapacitated detainee constitutes an excessive use of force." 583 F.3d at 407 (citation modified). In doing so, we cited approvingly our unpublished decision in *Pigram ex rel. Pigram v. Chaudoin*, 199 F. App'x 509, 513 (6th Cir. 2006), where we held that slapping a handcuffed plaintiff in the face using "relatively minimal" force, resulting in no injury, was also "gratuitous violence." *Morrison*, 583 F.3d at 407; *see also Hughey*, 3 F.4th at 292. And, in *Solomon v. Auburn Hills Police Dep't*, we concluded in November 2004 that it was excessive for an officer to "push[] his entire weight against" an individual, grab her left arm (her right was already handcuffed), and "twist[] it behind her with such force that he fractured it in several places." 389 F.3d 167, 173 (6th Cir. 2004). The throughline for these cases is that officers' use of violent force against unresisting detainees who are partially or fully handcuffed amounts to gratuitous violence that violates the Fourth Amendment. Hence, these cases clearly establish that a reasonable officer would have been on notice in March 2022 that it was unlawful to apply

pain compliance techniques like a half nelson and twisting of a wrist to a handcuffed individual who offered no voluntary physical resistance.

## B. State-Law Claims

### 1.    Negligence

Franke also argues that the district court erred in granting summary judgment on his state-law battery and negligence claims.  He devotes little discussion in his opening brief (and even less in his reply) to his state-claim arguments.  The few pages of Franke's state-law argument focus on his battery claim and make no mention of his negligence claim.  We therefore consider the issue forfeited, affirm the district court's dismissal of the negligence claim, and consider only Franke's state-law battery claim in this appeal.  *See Brown v. Louisville-Jefferson Cnty. Metro Gov't*, 135 F.4th 1022, 1030 (6th Cir. 2025) ("In this Circuit, an appellant forfeits an argument that he fails to raise in his opening brief.").

### 2.    Battery

On his battery claim, Franke argues summary judgment was inappropriate because Janes is not entitled to qualified immunity under Kentucky law.  We agree with Franke for the same reasons underpinning our decision on federal qualified immunity.

In Kentucky, a battery is "any unlawful touching of the person of another, either by the aggressor himself, or by any substance set in motion by him." *Browning v. Edmonson Cnty.*, 18 F.4th 516, 531 (6th Cir. 2021) (quoting *Vitale v. Henchey*, 24 S.W.3d 651, 657 (Ky. 2000)). Under Kentucky law, police officers and other public officials have qualified immunity from such claims if they were performing "(1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority." *Franklin v. Franklin Cnty.*, 115 F.4th 461, 478 (6th Cir. 2024) (quoting *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001)). We have previously held that deciding the amount of force required by a situation is a discretionary act within the scope of a police officer's authority under Kentucky law. *See Reich v. City of Elizabethtown*, 945 F.3d 968, 982–83 (6th Cir. 2019); KY. REV. STAT. §§ 503.050 (use

of physical force in self-protection) and 503.090 (use of physical force in law enforcement). Thus, here, the only element at issue is "good faith."

To show that Janes failed to act in good faith, Franke must show one of two things: (1) that Janes violated a clearly established constitutional or statutory right or (2) that there is evidence that Janes willfully or maliciously intended to harm him. *Bryant v. Pulaski Cnty. Det. Ctr.*, 330 S.W.3d 461, 466 (Ky. 2011). Viewing the facts in the light most favorable to Franke, he has offered facts sufficient for a reasonable jury to conclude that Janes violated his clearly established right to be free from the gratuitous use of force. So we need not consider the second prong. *See Reich*, 945 F.3d at 983 (explaining that bad faith may be established by satisfying either prong one *or* prong two). We therefore reverse the grant of summary judgment on Franke's state-law battery claim.

## IV.

For the foregoing reasons, we AFFIRM IN PART, REVERSE IN PART, and REMAND to the district court for further proceedings.